## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Crim. No. 22-229 (ADC)** |
| **JOSEPH PAYNE-PABON,** | |
| **Defendant.** | |

### OPINION AND ORDER

### I.    Introduction

In the above-captioned criminal proceeding, a belated, eleventh-hour filing of a notice of expert witness disclosure by defendant Joseph Payne-Pabón ("defendant") forced the Court to consider, on the eve of a long-scheduled trial, whether to allow expert witness testimony on defendant's alleged mental condition. **ECF No. 135**. Upon receiving this notice, the Court haled counsel for defendant and the government to a hearing on Friday, August 16, 2024, and heard arguments from both sides. In the end, considering the best interests of justice, the Court decided to allow the late disclosure even though it found that defendant had blatantly ignored the notice requirements of Fed. R. Crim. P. 12.2 and 16. The Court nonetheless ordered that the scope of the proposed testimony be limited, allowed the government time to retain an expert witness of its own, and afforded it the opportunity to have its expert perform a mental evaluation of defendant. Although the Court ruled from the bench, gave the reasons for its decision in open

court, and held two other follow-up hearing on the matter as well, this Opinion and Order restates and supplements the Court's reasoning.

The Court will begin by rehearsing the procedural trajectory of the case in general. The Court will then describe the timing and the contents of the late-filed expert witness disclosure, after which it will provide the reasons for its decision to allow the testimony. As explained further below, the Court finds that Fed. R. Crim. P. 12.2(b) applies to defendant's disclosure, that the disclosure was procedurally untimely, and that it was substantively deficient under both Fed. R. Crim. P. 12.2 and 16. But, because of the seriousness of the charges against defendant, the Court will allow the expert witness to testify under certain conditions set forth below, including allowing the government to retain an expert of its own to evaluate defendant. The Court concludes by providing guidance for the parties on the steps to be taken in light of this decision.[1]

## II.    Procedural Background

### A.  The Proceedings Thus Far.

This case was indicted on May 25, 2022. **ECF No. 1**. Defendant is accused of committing a carjacking resulting in death in violation of 18 U.S.C. § 2119(3), an offense penalized with life imprisonment or death. *Id.* On May 26, 2022, the government informed that it would not be seeking the death penalty against defendant. **ECF No. 5**.

---

[1] This Opinion and Order supersedes any order or ruling handed down in open court that may be inconsistent with its terms.

Several status conferences and hearings have been held throughout the early stages the case. **ECF Nos. 16, 19, 32**, **35, 70**. A Federal Public Defender was appointed to represent defendant on June 10, 2022, **ECF No. 9**, and First Assistant Federal Public Defender Héctor Ramos appeared on his behalf on June 13, 2022, **ECF No. 11**. On August 23, 2022, FAFPD Ramos informed the Court that he would be commissioning a competency evaluation from a private expert. **ECF No. 19**. On November 14, 2022, and later during a status conference held on January 17, 2023, FAFPD Ramos represented to the Court that the evaluation showed that defendant was competent to stand trial. **ECF No. 32, 35**.[2] FAFPD Ramos indicated that neither the filing of dispositive motions nor the presentation of witnesses was anticipated. **ECF No. 35**. Consistent with such representations, no dispositive motions were filed within the time frame set by the Court, and trial was thus set to begin on July 10, 2023. *Id.*

Based on the original trial setting, the government's designation of evidence under Fed. R. Crim. P. 12 was due on February 27, 2023. **ECF Nos. 37**. Among other evidence, the government proffered and represented that it would use some statements made by defendant while in custody and a positive photo identification,[3] which had been disclosed to defendant prior to January 17, 2023. *See* Minutes of Status Conference, Jan. 17, 2023, at **ECF No. 35** ("The

---

[2] The Psychodiagnostic Assessment Report, discussed further below, was issued on October 22, 2023.

[3] The subject of a pair of late-filed suppression motions and an evidentiary hearing that are discussed further below. The Court orally ruled on the motion to suppress the identification at the suppression hearing held on August 8, 2024. *See* Tr. of Suppression Hr'g, Aug. 8, 2024, **ECF No. 120** at 155:12 to 158:22. Defendant later moved for reconsideration. Of the Court's ruling, which remains pending **ECF No. 122**.

government informed discovery was completed….”). On February 28, 2023, the government filed a motion requesting reciprocal discovery from defendant, including “[i]mmediate disclosure of all evidence discoverable under Federal Rule of Criminal Procedure 16(b)(1)(A), (B) and (C)” and notice of any intention to “introduce expert evidence relating to a mental disease or defect, or any other mental condition, under Federal Rule of Criminal Procedure 12.2(b).” **ECF No. 39**. The request, being unopposed, was granted on March 21, 2023. **ECF No. 40**.

On May 3, 2023, the government requested continuance of trial due to a scheduling conflict. **ECF No. 45**. Counsel for defendant did not oppose the request and also had scheduling conflicts surrounding the original trial date. *Id.* The Court thus re-scheduled trial for September 26, 2023. **ECF Nos. 46, 47**. On August 1, 2023, Assistant Federal Public Defender Yasmin Irizarry-Pietri filed a notice of appearance assuming the representation of defendant and replaced FAFPD Ramos. **ECF No. 50**. Both parties then informed the Court that a continuance was warranted to give new counsel time to familiarize herself with the case. **ECF No. 51**. The Court, for a second time, re-scheduled trial for good cause shown. **ECF No. 52**. Trial was reset for February 12, 2024. *Id.*

On October 2, 2023, the Court set an “In Limine motions” deadline for December 15, 2023 “with no extensions to be granted.” **ECF No. 53**. The government filed several such motions prior to the established deadline (**ECF Nos. 42, 43, 44, 49, 57**), and one of them just three days

after (**ECF No. 60**). Defendant, for his part, filed one such motion before the deadline. **ECF No. 59**.

On December 22, 2023, AFPD Irizarry filed a motion seeking another continuance of trial as well as "reasonable accommodation" for defendant. **ECF No. 63**. It included as an exhibit a "Psychodiagnostic Assessment Report" dated October 20, 2022, and prepared by clinical psychologist Dr. Alexandra M. Ramos-Duchateau ("Dr. Ramos"), which turned out to be the same report commissioned by defendant's former counsel, AFPD Ramos, to determine whether he was competent to stand trial. *See* **ECF Nos. 19, 32, 35**. On January 2, 2024, defendant supplemented his request with a second report by Dr. Ramos, titled "Reasonable Accommodation Assessment Report," dated December 24, 2023. **ECF No. 67**. As suggested by its name, this second report was issued for the sole purpose of supplementing defendant's request for accommodation in the form of shorter trial days of three hours per session.

At the pretrial conference held on January 10, 2024, where pending pre-trial motions were discussed, AFPD Irizarry did not notify or identify any witnesses but, as a prophylactic matter, did not rule out "1-2 witnesses." **ECF No. 70**. Despite having retained a clinical psychologist and having submitted two of her reports to the Court as attachments in support of other motions (*i.e.*, the request for shorter trial days), the defense did not then announce any expert witnesses

or expert-based evidence for use in defendant's case-in-chief.[4] Trial was reset for August 5, 2024. *Id.*

In June of 2024, the parties began to file a flurry of pre-trial motions. Defendant started with an untimely motion to suppress the statements the government announced it intended to use back in February of 2023. **ECF No. 79**. The government opposed. **ECF No. 82**. That same day, the government requested that the Court hold a second pre-trial conference to discuss several pending matters, including defendant's lack of response to the government's prior request for reciprocal discovery and lack of identified witnesses (despite prior indication that they had been working with an expert). *See* **ECF No. 83**.

Motion practice continued. Defendant filed a reply in support of its motion to suppress statements, arguing that the motion was timely because no pre-trial motion deadline had been in place. **ECF No. 87**. But later, in July of 2024, the government filed several discovery related motions. **ECF Nos. 98, 100, 106**. Defendant also filed an additional motion *in limine* on July 24, 2024, related to the photo identification of the defendant. **ECF No. 97**. This motion was filed by Assistant Federal Public Defender Alejandra Bird-López, who had joined the defense on July 15, 2024. **ECF No. 90**. The photo identification evidence had, like the post-arrest statements, also been disclosed by the government since February of 2023.

---

[4] The Court is aware that defendant is not required to identify its factual lay witnesses, but that is not the case as to expert evidence. *See* Fed. R. Crim P. 12.2(b) and 16(b)(1)(C).

The Court, out of abundance of caution and in the interest of fairness, opted not to engage in the procedural dispute regarding the timeliness of these motions. However, the truth of the matter is that the deadline for filing "in limine motions" under Fed. R. Crim. P. 12 was December 15, 2023, and that those "in limine motions" were intended to relate to any evidence finally designated by the government months before on February 28, 2023. Moreover, the issues ultimately raised by the defense in its motions to suppress (E**CF Nos. 79, 97**) are based on discovery and facts known to the defense since 2022 and early 2023, which could have clearly led to the denial of the motion to suppress as untimely.

The suppression hearing was set for August 8 and trial was reset for August 13, 2024. **ECF Nos. 84, 94**. On August 7, Assistant Federal Public Defender Samuel P. Carrión joined defendant's legal representation and appeared for the suppression hearing. **ECF No. 114**. On the last day of the suppression hearing, on August 12, 2024, the Court had to reschedule trial for August 15 due to the expected effect of Tropical Storm Ernesto. **ECF No. 127**. The Court conspicuously warned the parties that no further motions should be filed, as trial was then due to begin a mere three days later. **ECF No. 133**.

Notwithstanding, and despite the Court's explicit admonition to refrain from further filings, on August 13, 2024, little more than a day before the scheduled commencement of trial, the defense filed a motion entitled "Disclosure of Expert Witness." **ECF No. 135**.[5] In the same,

---

[5] Undoubtedly, motion practice in this case has been intense, but compliance with reciprocal discovery remains the duty of the defense. *See* Fed. R. Crim. P 16. The same was requested by the government since February 2023 and was ordered to be complied with in March 2023. It took the defense almost a year to file disclosure and give notice.

defendant provides notice of its intent to introduce the testimony of Dr. Ramos as an expert, based on the reports she had rendered regarding defendant's competency to stand trial dated October 20, 2022 (**ECF No. 63-1**) and recommendation for reasonable accommodation (of shorter trial days) dated December 24, 2023 (**ECF No. 67-1**). On the morning of August 14, 2024, the government moved to strike the notice as untimely and substantively deficient. **ECF No. 136**. That same day, the Court was forced again to re-scheduled trial from August 15 to August 19, 2024, due to the impending arrival of Tropical Storm Ernesto the night of August 14. **ECF No. 138**. And just as the Court was preparing its ruling on the government's motion to strike, defendant filed his opposition on the morning of August 16, 2024. **ECF No. 146**. That same day, the Court held its hearing to discuss this development.

### B. Defendant's Notice of Expert Witness, the Government's Motion to Strike, and Defendant's Opposition.

Before going into the details of the August 16 hearing, the Court will briefly summarize the substantive context in which defendant's late-filed expert witness disclosure was made, as well as the government's reaction.

To wit, the record reflects that Dr. Ramos' reports were disclosed to the government on December 22, 2023, and January 2, 2024, respectively, but only as attachments to motions seeking the continuance of trial and reasonable accommodations. *See* **ECF Nos. 63, 67**. Defendant also used the December 22 report in support of his motion to suppress statements. *See* **ECF No. 79-4**.

---

Sadly, this is just one example of how the AFPDs in this case have chosen playing fast and loose with judicial procedure over respecting the Court's rules and orders.

The Court allowed Dr. Ramos' testimony at the hearing on defendant's motion to suppress, in order to assess whether the post-arrest statements made by defendant were admissible.[6]

Notwithstanding the fact that the Court allowed defendant to have a hearing on his motion to suppress (which was unaccompanied by an affidavit or other evidence) and to present undisclosed expert evidence, the defense now seeks further indulgences. Specifically, the defense's August 13, 2024 notice informs of defendant's intent to introduce Dr. Ramos' testimony:

> "to help jurors (1) understand Mr. Pabon's performance on psychodiagnostics and reasonable accommodation evaluations and his cognitive impairments as evidenced by said evaluations; (2) assess whether Mr. Payne's cognitive impairments affect his ability to understand complex legal topics, such as Miranda warnings; (3) understand how Mr. Payne's memory impairments affect his cognitive functions and his ability to process information in memory; (4) explain why Mr. Payne's repeated exposure to legal concepts would not necessarily ensure his comprehension of those concepts; (5) describe how Mr. Payne's impaired cognitive abilities impact his risk for suggestiveness, acquiescence, or the "masking" of his cognitive deficiencies."

**ECF No. 135** at page 2.

The government, despite having extremely short notice, managed to assert four separate grounds on which to strike defendant's notice. **ECF No. 136**. First, that the notice is untimely and that its contents do not comply with Fed. R. Crim P. 16.[7] Second, that any expert testimony

---

[6] Although the motion remained pending at the time of the August 16, 2024 hearing, the Court orally advanced its decision to the parties at that time, denying the motion to suppress the statements. A written Opinion and Order stating the grounds for denial is to follow.

[7] The government noted that, as mentioned above, it had made two prior requests for Rule 16 disclosures to defendant, on February 28, 2023, and on June 26, 2024, but that defendant never disclosed his intention of using Dr. Ramos as a witness in its case-in-chief. **ECF No. 136** at 1-2; *see also* **ECF No. 83** at 2 ("Moreover, a request for

or report regarding defendant's need for "reasonable accommodation" is not relevant for trial purposes and entails matters already considered and ruled upon by the Court. Third, that the other admissibility grounds asserted by defendant are not supported or detailed within Dr. Ramos' reports since they address issues not within the province of the jury that are already being addressed through the motion to suppress (*e.g.*, "masking" behavior, defendant's ability to comprehend legal issues vis-a-vis repeated legal exposure). And fourth, that the delayed notice, if accepted, would deprive the government of the opportunity to retain and consult its own expert, of requesting an independent evaluation of defendant, and/or of requesting a continuance of trial. Accordingly, the government requested, in the alternative to striking the notice, that the Court grant it a continuance in order to allow it to retain an expert and consider evaluating defendant.

Defendant's position, as stated in its response at **ECF No. 146**, is summarized as follows. First, that the notice is not untimely because (i) the government itself continued to file *in limine* motions beyond the December 15, 2023 deadline; (ii) the government disclosed relevant discovery "on the eve" of the suppression hearing, when it disclosed the identity of a second police officer present during the custodial interrogation; (iii) the suppression motion regarding the statements that Dr. Ramos would testify on was still pending, making her use at trial

---

reciprocal discovery and for notice of affirmative defenses was filed in February 2023 and granted in March 2023. We have not yet received any response to this request. During prior conferences, the [d]efense had indicated that they had not identified any witnesses. ECF Nos. 35 and 70. However, during recent electronic communications, defense counsel made requests for additional discovery and mentioned working with an expert. However, no expert notice has been filed by the Defense and no expert disclosures have been received by the [g]overnment.").

conditional on whether it was granted or not, and (iv) the government "knew" of Dr. Ramos'

potential testimony when she was announced as an expert for the defense for purposes of the

suppression hearing but failed to move for a *Daubert* hearing. Second, that, even if the notice

was untimely, any Rule 16 violation would be *de minimis* given that (i) the government had and

knew of Dr. Ramos' reports for over seven months, and thus had knowledge of her opinions;

(ii) the government has already cross-examined her during the suppression hearing; and (iii)

defendant produced to the same prosecutors in this case a copy of Dr. Ramos' *curriculum vitae*

as part of their disclosures, though in another, unrelated criminal case.[8] Third, that if the

statements at issue are not suppressed, the testimony of Dr. Ramos would be relevant as to the

reliability and weight of these statements, which is something properly for the jury to consider

by juxtaposing defendant's cognitive deficits against the reliability of the police testimony.

Fourth, that the government has not shown that Dr. Ramos' testimony would warrant exclusion

under Fed. R. Evid. 403(b). Fifth, that the government's remedy, if any, should be to request the

continuance of trial. And sixth, that the government has no right to perform an independent

evaluation of defendant because defendant is not raising an insanity defense.

### C.  The August 16 Hearing and Subsequent Filings.

Having reviewed these submissions, the Court called both parties to a hearing on Friday

August 16, 2024, and discussed their respective positions. Hr'g, August 16, 2024, at 2:02pm The

government confirmed that it would seek to use the custodial statements at trial and orally

---

[8] *United States v. Vidal-Collazo*, Crim. No. 22-356 (ADC) (D.P.R.).

replied to defendant's opposition to the motion to strike. *Id.*, at 2:09pm. Defendant, after prodding from the Court, clarified what his intentions were as to the proffered expert witness. *Id.*, at 2:18pm. Then, in addition to finding defendant in blatant violation of his timely notice and disclosure obligations under Rule 16, the Court also raised the issue of the applicability of Rule 12.2(b) and sternly admonished defense counsel AFPD Carrión for failing to provide timely notice under that rule and for repeatedly shifting the stated purpose for which the expert testimony was proffered, as well as the ever-changing characterization of defendant's mental condition. *Id.*, at 2:19pm to 2:25pm; 2:43pm to 2:45pm. The government argued emphatically as to both of these issues and posited that the jury would not be helped by the proffered testimony. *Id.*, at 2:25pm. In its final turn, it also characterized defendant's tactics as laying the groundwork for the introduction of expert evidence on "false statements or confessions." *Id.*, at 2:28pm. As to this last issue, AFPD Carrión outright denied and disclaimed that the defense had any such intent.[9] *Id.*, at 2:33pm.

In the end, the Court reluctantly ordered that the trial be continued to a later date and that defendant file a motion narrowing the scope of the proposed expert testimony, defining it by clear proffer. *Id.*, at 4:34pm. It also ordered the government to inform whether it had retained an expert and whether said expert would request to perform a mental evaluation of defendant, among other things. *Id.*, at 4:35pm. Defendant complied on August 22, 2024. **ECF No. 155**. The

---

[9] Nonetheless, as further discussed below, defendant's final iteration of Dr. Ramos' proposed testimony includes this very topic. **ECF Nos. 155** at 2-3.

government then complied on August 29, 2024 and informed that, if Dr. Ramos were to testify, it would avail itself of the option of having its expert evaluate defendant. **ECF No. 156**. The government, in addition, also moved to strike parts of the revised scope of Dr. Ramos' proffered expert testimony. *Id.*, at 3-5.

Further motion practice followed. Defendant filed an opposition to the government's motion on September 4, 2024. **ECF No. 159**. It essentially argued for reconsideration of the Court's decision at the August 16 hearing to allow the government to retain an expert to conduct a mental evaluation of defendant on the basis that the Court's application of Fed. R. Crim. P. 12.2(b) was in error. In any case, defendant requested that any evaluation be performed with his counsel present and that it be videorecorded. He further maintained that Dr. Ramos' testimony should not be stricken. The government replied on September 17, 2024. **ECF No. 162**. Defendant filed a sur-reply on September 24, 2024. **ECF No. 164**.

The Court then held a hearing on December 5, 2024, where it recapitulated and restated its prior rulings on the matter and set a further hearing to discuss the terms of the government expert's mental evaluation of defendant. *See* **ECF No. 169**; *see also* Tr. of Pre-Trial Conference, Dec. 5, 2024, **ECF No. 174**. The subsequent hearing was held the next week, on December 13, 2024. *See* **ECF No. 177**; *see also* Tr. of Motion Hr'g, Dec. 13, 2024, **ECF No. 184**.

### III.   Legal Standard

Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure provides for a defendant's duty to disclose to the government certain information "for any testimony that the defendant

intends to use under [Fed. R. Evid.] 702, 703, or 705 during the defendant's case-in-chief at trial."

Fed. R. Crim. P. 16(b)(1)(C). This duty to disclose arises when a defendant requests a similar

disclosure from the government and the government complies, or when "the defendant has

given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's

mental condition." Fed. R. Crim. P. 16(b)(1)(C)(i). A defendant's expert disclosure must contain:

- a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief;
- the bases and reasons for them;
- the witness's qualifications, including a list of all publications authored in the previous 10 years; and
- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(b)(1)(C)(iii). Compliance with this disclosure requirement must be had

"sufficiently before trial to provide a fair opportunity for the government to meet the defendant's

evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii).

For its part, Fed. R. Crim. P. 12.2(b) requires a defendant to provide notice to the

government of its intent to "introduce expert evidence relating to a mental disease or defect or

any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the

issue of punishment in a capital case." Fed. R. Crim. P. 12.2(b). This notice must be made "within

the time provided for filing a pretrial motion or at any later time the court sets." *Id.* A notice

made under Rule 12.2(b) permits, but does not compel, a court to grant a request by the

government to "order the defendant to be examined under procedures ordered by the court."

Fed. R. Crim. P. 12.2(c)(1)(B).

Where there is no pre-trial discovery order governing the timing of expert disclosures, the district court's decision on whether a disclosure is timely or meets the content requirements under Rule 16 is subject to its sound discretion. *See, e.g., United States v. Holmes*, 670 F.3d 586, 598 (4th Cir. 2012) (reviewing for abuse of discretion district court's decision to exclude expert testimony because of non-compliance with Rule 16(b)(1)(C)); *United States v. Day*, 524 F.3d 1361, 1371 (D.C.C. 2008) (applying abuse of discretion standard to exclusion of expert witness for failure to comply with Rule 16); *United States v. Petrie*, 302 F.3d 1280, 1289 (11th Cir. 2002) ("Relief for violations of discovery rules lies within the discretion of the trial court.") (internal citation omitted).

If a party fails to comply with Rule 16's requirements, the Court may, among other sanctions, "prohibit [a] party from introducing the undisclosed evidence; or... enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(C)-(D). "The district court, of course, has broad discretion in handling non-compliance with discovery orders under the provisions of the Federal Rules of Criminal Procedure." *United States v. Osorio*, 929 F.2d 753, 762 (1st Cir. 1991); *see also id.*, at 762 n.2 (citing Fed. R. Crim P. 16(d)(2)). On the other hand, if a defendant fails to comply with Rule 12.2(b)'s notice requirement or fails to submit himself to an examination ordered under Rule 12.2(c), "the court may exclude any expert evidence from the defendant on the issue of the defendant's mental disease, mental defect, or any other mental condition bearing on the defendant's guilt...." Fed. R. Crim. P. 12.2(d)(1).

### IV.    Discussion

### A.  Applicability of Rule 12.2(b).

Both parties framed their positions with respect to defendant's Rule 16(b)'s discovery obligations. However, a close examination of the context in which defendant's expert witness proffer was made has led the Court to conclude that Rule 12.2(b) is likewise applicable, and more readily so.

During the August 16 hearing, the Court raised the matter of the applicability of Rule 12.2(b)(1) to Dr. Ramos' testimony. *See* Hr'g, August 16, 2024, at 2:18pm. AFPD Carrión attempted to remove the testimony from the scope of the Rule by arguing that the defense had no intention of raising an insanity defense. *Id.* 2:18pm to 2:19pm. The Court pointedly guided counsel for defendant to the text of Rule 12.2(b)(1), which does not deal with an intent to raise an insanity defense, but rather with the intent to present expert evidence as to any mental condition bearing on the issue of guilt. *Id.* Counsel for defendant then attempted to create distinctions between the terms "mental disease," "mental defect" and "mental condition" and his preferred ones, "cognitive impairment," "intellectual impairment," and "cognitive deficits." *See id.*, at 2:19pm to 2:24pm; *see also id.*, at 2:49pm.[10] When the Court rejected these subtle mischaracterizations, he then argued that the proffered expert testimony would not bear on the issue of guilt. *See id.*, at 2:31pm; 2:49pm. The Court's retort was straightforward and logical: the

---

[10] Counsel for defendant apparently forgot that Dr. Ramos herself referred to defendant's "mental conditions" in her Psychodiagnostic Assessment Report, something that the defense actually used in their favor in the motion to suppress. *See* **ECF No. 79** at 18.

testimony was going to be used, ostensibly, to convince the jury not to rely on defendant's incriminatory statements to police officers, evidence which would invariably bear on the issue of whether defendant is guilty or not.[11] *See id.*, at 2:20pm; 2:31pm.

The Court is convinced that Rule 12.2(b) applies to Dr. Ramos' proffered expert testimony. On its face, it is expert evidence relating to a mental condition.[12] Moreover, the purpose for which Dr. Ramos' testimony is being proffered—ostensibly to challenge the reliability of defendant's custodial statements due to his borderline intellectual functioning—nonetheless threatens (whether intentionally or not) to cast a cloud of doubt over his possible guilt due to a mental condition.

Rule 12.2(b) requires that notice be given to the government by a defendant who "intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . (1) the issue of guilt. . . ." Fed. R. Crim. P. 12.2(b)(1). "In most cases the proposed evidence must have some 'bearing on the issue of guilt,' and this can require some judicial line-drawing as to what cases are covered and not covered by the Rule." 1A Charles Alan Wright & Andrew D. Leopold, *Fed. Prac. & Proc. Crim.* § 208 (5th ed. 2020). Before

---

[11] At some points during the August 16 hearing, the Court questioned whether it was feasible to, and the defense entertained the possibility of, instructing the jury as to how defendant's intellectual impairments do not amount to defendant having a mental illness or condition and that Dr. Ramos would not be testifying as much. *See* Hr'g, August 16, 2024, at 2:22pm; 2:46pm.

[12] The Court finds support for this conclusion in how some courts have considered evidence of low or borderline intellectual functioning to be evidence of a "mental condition" in relation to the "voluntariness" of a *Miranda* waiver. *See, e.g., United States v. Rojas-Tapia*, 446 F.3d 1, 7 (1st Cir. 2006) ("[T]he fact that Rojas-Tapia **has a relatively low I.Q.** . . . is not dispositive of the waiver determination. A defendant's **mental state or condition**, by itself . . . is never dispositive. . . .") (emphasis added) (citing *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)).

a 1983 amendment, the language used in the rule was "bearing upon the issue of whether [defendant] had the mental state required for the offense charged." The 1983 amendment, which incorporated the current language, was intended to expand the notice requirement to "**all circumstances** in which the defendant plans to offer **expert testimony concerning his mental condition at the time of the crime charged**." Fed. R. Crim. P. 12.2(b) Advisory Committee Note to 1983 amendments (emphasis added). This expansion, for example, was meant to cover instances such as when psychological evidence is intended to be used to show susceptibility to inducement in the context of an entrapment defense. *Id.* (discussing *United States v. Hill*, 481 F. Supp. 558 (E.D. Pa. 1979)). Thus, "the drafters plainly contemplated broad coverage to ensure that the goal of giving the government adequate notice is achieved." Wright & Leopold, *supra*, at § 208.[13]

In the Court's view, Rule 12.2(b)(1) encompasses a broad swath of circumstances where expert evidence on mental conditions is intended to be introduced at trial. Any mental condition for which expert testimony is sought, whether it is called a cognitive or intellectual impairment or not, is covered under the Rule. Further, because defendant wants the jury to consider his mental condition when passing judgment on a "critical piece of evidence"—as defendant himself

---

[13] Rule 12.2(b) deals with the presentation of expert evidence and is not directly conditioned on the raising of any specific affirmative defense. This contrasts with Rule 12.2(a) which deals separately with a "defendant who intends to assert a defense of insanity at the time of the alleged offense." Fed. R. Crim P. 12.2(a). And although "insanity" and "mental condition" might be related concepts, the language of Rule 12.2(a) and (b) differ significantly in that the former is explicitly referred to as a defense while the latter merely qualifies the type of expert evidence that is covered. Rule 12.2(b)'s main concern is with avoiding trial delays by affording the government adequate pretrial notice to prepare its position as to expert evidence on mental conditions. Wright & Leopold, *supra*, at § 208. Its applicability is not dependent on whether a certain defense is raised or not.

described the purportedly incriminatory statements at issue (**ECF No. 146** at 10)—it necessarily bears on his guilt. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("[The] jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt. . . ."). The Court is hard-pressed to see how this intended use is not covered by Rule 12.2(b).[14]

In defendant's more recent filings, he puts forth the argument that Rule 12.2(b) is meant to apply in circumstances where the defendant's mental condition at the time the offense was committed is at issue. **ECF No. 159** at 9. Nothing in the text of the Rule suggests that limitation. Moreover, this argument comes perilously close to being a red herring because, in criminal cases, an expert witness is already barred from stating "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 702(b). Therefore, Rule 12.2(b)(1) would be superfluous if read as rigidly and narrowly as defendant suggests. Under his interpretation, expert testimony that is presumably allowable under Rule 12.2(b)(1) would then nonetheless be largely inadmissible by automatic operation of Fed. R. Evid. 702(b).[15]

That said, defendant does point to some cases in which the Rule was applied in those circumstances, but these say nothing about other possible applications of the Rule. In addition, the Court is not persuaded by defendant's reliance on *United States v. Roubideaux*, No. 4:22-CR-

---

[14] In addition, a narrower reading of the rule risks creating a back door for the introduction of a type of watered-down insanity defense through expert evidence of a mental condition that does not meet the insanity bar. *See* 18 U.S.C. § 17(a)("Mental disease or defect does not otherwise constitute a defense.").

[15] *See also* Hr'g, August 16, 2024, at 2:31 to 2:32pm (discussing defendant's interpretation and Fed. R. Evid. 704(b)).

40033-LLP, 2022 WL 16961123 (D.S.D. Nov. 16, 2022). This is an unpublished order from an out-of-circuit district court where, in a footnote, the District Judge summarily discarded Rule 12.2(b)'s applicability to so-called "false confession" expert evidence based on a reading of the advisory committee's note to the Rule. *Roubideaux*, 2022 WL 16961123, at *2 n.1. Respectfully, the Court reads both the Rule and the advisory committee's note differently, and thus disagrees with *Roubideaux's* conclusion.

Accordingly, pursuant to its own analysis, the Court finds that the intended use of the expert witness falls within the scope of Rule 12.2(b).

### B. Defendant's Disclosure is Untimely Under Both Rule 12.2(b)(1) and Rule 16(b)(1)(C)(ii).

Whether under Rule 12.2(b) or Rule 16(b)(1)(C), defendant's notice is untimely. Under Rule 12.2(b), the notice needed to have been filed by the deadline for pretrial motions, although the Court can excuse the omission. *See* Fed. R. Crim. P. 12.2(b) and (d)(1)(A). That deadline fell on December 15, 2023. **ECF No. 53**.[16] Likewise, defendant's notice is untimely under Rule 16(b)(1)(C). There is no question that the expert witness disclosure had to be made given the government's request for reciprocal discovery made on February 27, 2023 (**ECF Nos. 37**) and reiterated on June 26, 2024 (**ECF No. 83**). Fed. R. Crim. P. 16(b)(1)(C)(i). Both requests went

---

[16] The Court highlights, as mentioned above, that by November 14, 2022 and later on January 17, 2023, counsel for defendant AFPD Ramos (who then formed part of the same Federal Public Defender's Office as defendant's current counsel) had represented in Court that defendant had been found "competent" and that no dispositive motions were to follow. **ECF Nos. 32, 35**. The government and the Court properly relied on this "on the record" representation by the Federal Public Defender's Office while preparing for and setting trial.

unanswered by defendant, and he has proffered no excuse for the omission. Also, as per the Rule, the defendant's expert witness disclosure must be made "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii). Therefore, even if the Court were to excuse defendant's non-compliance its reciprocal discovery obligation arising from the government's first request for reciprocal discovery or with the December 15, 2023, motions deadline, there is no excuse for him not having notified the government once it reiterated its request for reciprocal discovery on June 26, 2024. **ECF No. 83**.

In addition, the fact that defendant used Dr. Ramos as a witness during the suppression hearing is of no consequence in this regard. Using an expert for purposes of a pre-trial motion on the admissibility of evidence (here, to determine whether defendant was capable of knowingly and voluntarily waiving his *Miranda* rights) is not equivalent to disclosing an intent to use the expert for defendant's case-in-chief.

Finally, there is similarly no excuse for defendant to have made the disclosure and notice on August 13, 2024—barely a day before trial was set to commence—after having heard the Court instruct the parties to file no further motions the previous day.[17] Therefore, it is beyond dispute that defendant's notice came no earlier than the eve of trial and is, by all lights, untimely.

---

[17] Other courts have found similar surprise disclosures untimely and have excluded the proposed expert testimony. *See, e.g., Holmes,* 670 F.3d at 598-99 (excluding expert testimony because of late disclosure three days before trial); *United States v. Hoffecker,* 530 F.3d 137, 184-88 (3rd Cir. 2008) (same, disclosure made three working days before jury selection); *Petrie,* 302 F.3d at 1288-89 (same, disclosure made on a Friday afternoon prior to trial beginning on Monday); *Day,* 524 F.3d at 1371 (same, disclosure made 28 hours prior to *Daubert* hearing).

### C.  Defendant's Disclosure is Partially Deficient under Rule 16(b)(1)(C)(iii)-(v).

As can be inferred from the above discussion, even in the absence of Rule 12.2(b)(1), Rule 16(b) would still be applicable to defendant's expert witness disclosure—and that presents its own consequences for defendant. Mainly, the content of defendant's disclosure would be partially deficient, as neither it nor Dr. Ramos' reports contain all the bases for her proffered opinions.

Starting with defendant's notice, it does not contain all of the information required by Rule 16(b)(1)(C)(iii). It lacks "a complete statement of all opinions that the defense will elicit from the witness in the defendant's case-in-chief [and] the bases and reasons for them." Interestingly, while addressing the government's notice of expert testimony at **ECF No. 121**, paragraphs 2 and 3, the defense indicated that the notice had to include "specificity as to the bases of opinions, a complete statement of the witness opinion and bases and reasons for that opinion." Now, defendant argues that "[t]he statement of the witness' opinion does not require a verbatim recitation of the testimony the expert will give at trial." **ECF No. 131** at 1. This convenient change in posture, occurring in the span of just three days, does not go unnoticed.

Defendant attempts to excuse his omission by pointing to Rule 16(b)(1)(C)(iv), which allows the expert witnesses report to provide the requisite information. But Dr. Ramos' Psychodiagnostic Assessment Report only goes to defendant's competency to stand trial and his mental health status and possible treatment needs. It does not contain all the data or a detailed description of the bases on which Dr. Ramos's opinions, as described in defendant's notice, are

premised. That is, aside from defendant's IQ, visual motor coordination skills, and competency

evaluations, the reports do not provide adequate notice to the government of Dr. Ramos' bases

for testifying as to how:

> Mr. Payne's cognitive impairments affect his ability to understand complex legal
> topics, such as Miranda warnings; . . . why Mr. Payne's repeated exposure to legal
> concepts would not necessarily ensure his comprehension of those concepts; [and]
> . . . how Mr. Payne's impaired cognitive abilities impact his risk for suggestiveness,
> acquiescence, or the "masking" of his cognitive deficiencies."

**ECF No. 135**. Because these opinions are not found in Dr. Ramos' Psychodiagnostic Assessment

Report, defendant cannot avail himself of Rule 16(b)(1)(C)(iv) to dispense with the requirement

that Dr. Ramos approve and sign the disclosure under Rule 16(b)(1)(C)(v).[18]

Finally, during the December 13, 2024 hearing, AFPS Bird all but conceded that the

disclosure was deficient, but attempted to spin this fact into an argument for allowing defendant

to amend the disclosure. *See* Tr. Of Motion Hr'g, **ECF No. 184** at 27:6-23. But defendant should

not be allowed to take advantage of his own failure to comply with his timely notice obligation.

For these reasons, the Court concludes that defendant failed to give the government fair

and proper notice of the expected testimony of Dr. Ramos.

---

[18] Furthermore, defendant cannot rely on the fact that Dr. Ramos may have testified as to these other issues during
the suppression hearing. That testimony was elicited and permitted for the purposes of helping the Court determine
the admissibility of certain statements, not for its use at trial. Parts of that testimony are in many ways improper for
a jury to hear. *See, e.g.*, Fed. R. Evid. 704(b).

**D.  The Path Forward.**

As explained above, it is well within the Court's discretion to outright grant the government's motion to strike and preclude defendant from presenting Dr. Ramos' expert testimony at trial. However, due to the potential life imprisonment to which defendant is exposed and in the interest of fairness (and in spite of defense counsel's conduct, such as non-compliance with the rules of procedure, mischaracterization of facts, and shifts in legal postures), the Court has decided not to strike defendant's notice of expert witness. It has, however, decided to allow the government to retain an expert, have its expert perform an independent evaluation of defendant, and determine if it will request a *Daubert* hearing.[19] The Court has also taken into consideration the government's renewed motion to strike parts of the revised scope of Dr. Ramos' proposed expert testimony. The Court will address this latest matter first.

### 1.      The Permissible Scope of Dr. Ramos' Testimony.

As discussed before, during the August 16, 2024 hearing, the defense expressed several contradictory positions on what Dr. Ramos' testimony was intended for, ranging from re-litigating for the jury the admissibility of defendant's statements (which is improper) to merely presenting the jury with the fact that defendant has below average intellect and could not have

---

[19] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993). As stated before, the government's lack of objection to defendant's use of Dr. Ramos as an expert for the suppression hearing, where there is no jury and where the Federal Rules of Evidence do not apply, is not equivalent to waiving a *Daubert* challenge against Dr. Ramos' expert testimony at trial. And the government was certainly not afforded sufficient time to brief its motion to strike because defendant's notice was filed barely a day prior to the commencement of trial and the government's motion less than 24 hours after.

provided reliable statements to the law enforcement officers the day of his arrest. Given the defense's moving-target strategy, the Court ordered defendant to narrow the scope of the expert testimony to what was properly supported by Dr. Ramos' Psychodiagnostic Assessment Report dated October 20, 2022.[20]

Defendant complied on August 22, 2024, submitting the list of topics on which Dr. Ramos will testify:

[1] Expert's interaction with Mr. Payne and the importance and process of obtaining informed and intelligent consent for the evaluation.

[2] How the expert selected the tests to administer to Mr. Payne and how she administered those tests.

[3] Explanation of the *Escala de Inteligencia Wechsler* (EIWA), *Third Edition*, what it measures, and how it is scored.

[4] The expert's administration of the confidentiality waiver and the steps that the expert took to obtain valid consent for the evaluation.

[5] The expert's assessment of the consistency between Mr. Payne's prior, self-reported diagnosis of Attention Deficit Disorder (ADD), and her clinical observations and whether those observations were consistent with that prior diagnosis.

[6] Expert's administration of the EIWA testing to Mr. Joseph Payne-Pabón, the results of that testing, including the Full Scale score and his score on the scales and sub-scales, and the implication of those results in describing Mr. Payne's capacity to perceive, comprehend, process, communicate, and retain information.

---

[20] Defendant erroneously describes the Court's order as limiting the scope to "the contents of the already submitted reports." *See* **ECF No. 155**. That is not entirely accurate. At the hearing, the Court said, "the report," not "the reports," and later indicated that "the report" is "psychological evaluation that was done by Dr. Ramos and the finding that she has within that report." Hr'g, August 16, 2024, at 2:35pm. To clarify, the Court meant to refer to the Psychodiagnostic Assessment Report of 2022. As previously mentioned, Dr. Ramos' "Reasonable Accommodation Assessment Report," dated December 24, 2023, was submitted for a different and specific purpose: to obtain shorter trial days as a reasonable accommodation for defendant.

[7] Expert's observations during Mr. Payne's clinical interviews on October 4, 2022, and December 18, 2023, and their implications in terms of Mr. Payne's ability to focus and concentrate and his capacity to perceive, comprehend, process, communicate, and retain information.

[8] The consistency of the expert's observations during Mr. Payne's clinical interviews on October 4, 2022, and December 18, 2023, and his EIWA testing results.

[9] The expert's diagnostic impressions and how her determination of Mr. Payne's borderline intellectual functioning is affected by her determination of his ADD.

**ECF No. 155**. The government then moved to strike parts of this revised scope on August 29, 2024. **ECF No. 156** at 3-5. It argues that Dr. Ramos' expert reports did not contain any opinions on the "implications" listed in topics 6 and 7, neither did they include her opinions on topic 9 (as numbered above). *Id.*, at 3-4. It further requests that the Court strike topics 1 and 4 because they are "irrelevant to any issues at trial" and are "simply an attempt to present the matter of [d]efendant's capacity to waive rights to the jury through a back door." *Id.*, at 4.

The Court notes that defendant's filing is very revealing. First, defendant's inclusion of his ADD within the list of subjects Dr. Ramos intends to testify on confirms that the defense's intended use of this expert evidence is facially within the scope of Rule 12.2(b)(1). Therefore, AFPD Carrión's representations to the Court during the August 16 hearing disclaiming any characterization of defendant's mental health as a disease, defect, or condition to avoid compliance with Rule 12.2(b) have now proven incorrect—if not outright misleading.

After reviewing the Psychodiagnostic Assessment Report, considering what was stated by the defense at the August 16 hearing, and defendant's motion in compliance regarding the

intended scope of the expert testimony, the Court harbors serious doubt as to whether allowing the jury to hear expert testimony on the above subjects is warranted. Among other reasons, Dr. Ramos' opinions on these matters are likely either not fairly within the scope of the report, irrelevant to establishing any fact of significance in this case, substantially more prejudicial, confusing, or misleading than probative, or would be of no help to the jury in understanding evidence or determining a fact at issue. *See* Fed. R. Evid. 402, 403, 702.

Most, if not all, of these subjects go to defendant's mental condition and its relation to the statements he said to law enforcement. The Court is mindful that these subjects are adjacent to the question of the statement's admissibility, which was the subject of defendant's suppression motion. Pursuant to Fed. R. Evid. 104(a), that matter is for the Court to decide. *See* Fed. R. Evid. 104(a); *Blake v. Pellegrino*, 329 F.3d 43, 48 (1st Cir. 2003). But defendant may nonetheless present evidence at trial to "familiarize a jury with circumstances that attend the taking of his [statement], including facts bearing upon its weight and voluntariness." *United States v. Feliz*, 794 F.3d 123, 130 (1st Cir. 2015) (quoting *Lego v. Twomey*, 404 U.S. 477, 486 (1972); *see also* 18 U.S.C. § 3501 ("…the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances."); Fed. R. Evid. 104(e) ("This rule does not limit a party's right to introduce before the jury evidence that is relevant to the weight or credibility of other evidence.").

Regardless, the Court has struggled with the question of whether a "borderline intellectual functioning" diagnosis is relevant evidence of the circumstances surrounding an inculpatory statement that should be allowed to be presented to the jury. Erring on the side of caution, because it is a factor that may be considered in determining whether a defendant has voluntarily waived his *Miranda* rights, the Court will assume that it is not per se improper for a defendant to present this type of evidence to the jury. *See Colorado v. Connelly*, 497 U.S. 157, 168 (1986) (tacitly accepting that "a defendant's mental condition" can be one factor to consider in the constitutional voluntariness analysis of *Miranda* rights, but certainly not, by itself, a dispositive one.); *Schneckloth v. Bustamante*, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included . . . [the accused's] low intelligence. . . ."); *see also United States v. Rang*, 919 F.3d 113, 117-19 (1st Cir. 2019) (considering expert evidence of the defendant's borderline intellectual functioning in constitutional voluntariness analysis of *Miranda* rights); *United States v. Rojas-Tapia*, 446 F.3d 1, 7 (1st Cir. 2006) (taking into consideration the defendant's borderline I.Q. of 71 in constitutional voluntariness analysis of *Miranda* rights); *United States v. Rosario-Diaz*, 202 F.3d 54, 69 (1st Cir. 2000) (considering expert and other evidence of defendant's "middle 70s" I.Q. in constitutional voluntariness analysis of *Miranda* rights).

The Court is less convinced, however, that expert testimony on this issue would be helpful to the jury. *See* Fed. R. Evid. 702(a). After all:

> Expert testimony can carry with it an unwarranted aura of special reliability and
> trustworthiness . . . so courts must guard against letting it intrude in areas that
> jurors, by dint of common experience, are uniquely competent to judge without

the aid of experts. . . . Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses.

*United States v. Soler-Montalvo*, 44 F.4th 1, 16 (1st Cir. 2022) (cleaned up). Permitting this type of expert testimony to go to the jury threatens to allow Dr. Ramos' impressions on defendant's mental capabilities to substitute the jurors'. No expert is entitled to testify or render opinion on the ultimate issue at trial. Fed. R. Evid. 704(b); *Díaz v. United States*, 602 U.S. 526, 533-34 (2024); *Soler-Montalvo*, 44 F.4th at 14. The Court has not been able to find comparable authority where expert testimony on a defendant's borderline intellectual functioning has been allowed at trial to challenge the weight or credibility of purportedly incriminating statements. *Cf. Crane v. Kentucky*, 476 U.S. 683 (1986); *United States v. Díaz-Rosado*, 857 F.3d 116 (1st Cir. 2017); *United States v. Feliz*, 794 F.3d 123 (1st Cir. 2015); *United States v. Campusano*, 947 F.2d 1 (1st Cir. 1991) (all involving questions of evidence of voluntariness presented to the jury but none involving expert testimony).

Therefore, in the exercise of its gatekeeping function, the Court **will permit** Dr. Ramos to testify as an expert on the following subjects:

- How Dr. Ramos selected the tests to administer to defendant and how she administered those tests.

- Explanation of the *Escala de Inteligencia Wechsler* (EIWA), *Third Edition,* what it measures, and how it is scored.

- Dr. Ramos' assessment of the consistency between defendant's prior, self-reported diagnosis of Attention Deficit Disorder (ADD), and her clinical observations and whether those observations were consistent with that prior diagnosis.

- Dr. Ramos' administration of the EIWA testing to defendant, the results of that testing, including the Full Scale score and his score on the scales and sub-scales.[21]

- The consistency of Dr. Ramos' observations during defendant's clinical interviews on October 4, 2022, and December 18, 2023, as it relates to his EIWA testing results.

On the other hand, the Court **will not permit** the jury to hear Dr. Ramos' expert testimony on:

- Dr. Ramos' interaction with defendant and the importance and process of obtaining informed and intelligent consent for the evaluation.

- Dr. Ramos' administration of the confidentiality waiver and the steps that the expert took to obtain valid consent for the evaluation.

- The implication of defendant's results in the EIWA test in describing his capacity to perceive, comprehend, process, communicate, and retain information.

- The implications of Dr. Ramos' observations of defendant during October 4, 2022 and December 18, 2023 interviews with him in terms of defendant's ability to focus and concentrate and his capacity to perceive, comprehend, process, communicate, and retain information.

- Dr. Ramos' diagnostic impressions and how her determination of defendant's borderline intellectual functioning is affected by her determination of his ADD.

### 2.    Defendant's supplemental proffer.

Independent of the above ruling, the Court has a few words on defendant's additional so-called "proffer" that was included in his latest motion. Specifically, defendant made an additional proffer of testimony for the record, which is reproduced in full below:

> Mindful of the Court's ruling that "[n]o further supplemental reports or evaluations will be permitted," we also include, for purposes of preserving the record, a proffer of additional information that would have been included in a supplemental notice and as part of Dr. Ramos's direct examination. Specifically, the notice and her expert testimony would have included information relating to a discussion of peer-reviewed literature on persons with intellectual impairments

---

[21] Subject to defendant's compliance with its duty to provide reciprocal discovery as per the Court's Order issued today at **ECF No. 188**.

in the context of police interrogation, and their susceptibility to **making false or misleading statements** while in police custody.

**ECF No. 155** at 3 (emphasis added).

This "proffer" stands in marked contrast to what was represented by AFPD Carrión during the August 16 hearing—and one other example of the defense's unseemly "moving target" litigation tactics. During the hearing, defendant's counsel disclaimed any intention of introducing this type of expert testimony a trial, which was referred to as testimony on "false confessions." AFPD Carrión said so explicitly. But now, the defense intends to offer expert testimony "on persons with intellectual impairments in the context of police interrogation, and their susceptibility to making false or misleading statements while in police custody." **ECF No. 135** at 3. Calling this a "proffer" likely responds to an attempt to preserve for appeal a claim that this extremely untimely, previously undisclosed expert testimony (whose subject matter is not even comprised in the 2022 or 2023 reports prepared by Dr. Ramos) was "improperly" excluded by the Court.[22] But that is not what this is: it is an affront to procedural notions of fairness and an attorney's duty of candor to the Court.[23] No such evidence will be permitted, and the Assistant Federal Public Defenders in this case should consider themselves admonished for what

---

[22] The Court notes that this type of expert evidence was recently proposed by the Federal Public Defender's Office and ultimately excluded by a sister Court in this District. *See* Order, *United States v. Jonathan Torres-Rojas*, Crim. No. 18-211-2 (CVR) (D.P.R. Aug. 16, 2024), ECF No. 277. The Court found that the testimony was unlikely to be of help to the jury and was excluded pursuant to Fed. R. Evid. 702.

[23] *See* American Bar Association, Model Rules of Professional Conduct, R. 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.").

is an unacceptable and poorly executed attempt at litigation brinksmanship, which could ultimately be the basis for disciplinary proceedings. L. Civ. R. 83(E).

### 3.        Independent mental evaluation.

Given that the Court has deemed defendant's Dr. Ramos' proffered testimony to fall under Rule 12.2(b)(1), the Court may order that defendant be examined by the government's expert. Fed. R. Crim. P. 12(c)(1)(B). The Court has the authority to define the procedure for the evaluation. *Id.* This is not a mandatory evaluation, but if defendant refuses to be evaluated, the Court may then exclude his expert evidence as a result of his non-compliance. Fed. R. Crim. P. 12(d)(1)(B).[24]

Because defendant's late notice has put the government at an unfair disadvantage, the Court has decided to afford the government the opportunity to evaluate him under Rule 12(c)(1)(B). The government expressed its intention to do so in its latest filings. **ECF No. 156**. Fed. R. Crim. P. 12.2(c)(1)(B). The Court will provide for procedures in a separate order.

### V.        Conclusion

For the reasons here stated, the Court:

(1) finds that defendant's notice of expert witness was untimely under both Fed. R. Crim. P. 12.2(b) and 16(b)(1)(C);

---

[24] In addition, under Rule 16(d), the Court can exercise its power to remedy a party's noncompliance with discovery obligations by "order[ing] that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions." Fed. R. Crim. P. 16(d)(2)(A). The Court may also "prohibit that party from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d)(2)(C). Or the Court may "enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(D). Therefore, whether under Rule 12.2 or 16, the Court has authority to order the examination.

(2) finds that defendant's untimely notice of expert witness is also partially non-compliant with Fed. R. Crim. P. 16(b)(1)(C);

(3) decides to nonetheless allow the proposed testimony of Dr. Ramos as limited above;

(4) denies defendant's additional "proffer" of expert testimony regarding false statements or confessions, inasmuch as the "proffered" scope is not part of nor supported by Dr. Ramos' expert reports; and

(5) will permit the government to perform a mental evaluation of defendant pursuant to Fed. R. Crim. P. 12.2(c)(1)(B) and under such procedures the Court establishes in a separate order; and

The Court has listed or alluded to various valid reasons to exclude or reject the expert testimony—mostly supported by defendant's procedural noncompliance. However, the Court exercises its discretion to protect defendant's right to due process and a fair trial. In other words, this means that the Court's ruling here is tied to the specific characteristics of this case, chief among them the fact that the defendant here is exposed to life imprisonment if found guilty. This determination is not to be taken as an open invitation to flaunt disclosure deadlines, a sign that the Court will not impose appropriate sanctions for their violations, or a willingness to accept novel theories for admission of expert testimony, which the Court has not done here.

**SO ORDERED.**

At San Juan, Puerto Rico, on this 18th day of March 2025.

**S/AIDA M. DELGADO-COLON**
**United States District Judge**